UNITED STATES of America, Appellee,

v.

Fred D. KELLEY and Paul P. Menz, Appellants.

Nos. 76–1208, 76–1209.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1976.

Decided Dec. 3, 1976.

Rehearings and Rehearings En Banc Denied Jan. 24, 1977.

Irl B. Baris, St. Louis, Mo., for appellants; Kenneth H. Graeber, St. Louis, Mo., on brief.

Marsha L. Johnson, Special Atty., U. S. Dept. of Justice, St. Louis, Mo., for appellee; Barry A. Short, St. Louis, Mo., on brief.

Before GIBSON, Chief Judge, STE-PHENSON, Circuit Judge, and MARKEY,* Chief Judge.

MARKEY, Chief Judge, U. S. Court of Customs and Patent Appeals.

These are separate, consolidated appeals by Fred D. Kelley and Paul P. Menz, each found (a), guilty of conspiracy, under 18 U.S.C. § 371 "to restrain, coerce, and intimidate, and attempt to restrain, coerce and intimidate members of a labor organization, for the purpose of interfering with and preventing the exercise of rights to which they are entitled under the provisions of Sections 411(a)(1) and 411(a)(2), Title 29, United States Code, in violation of Title 29, United States Code, Section 530," and (b), guilty of a substantive violation of 29 U.S.C. § 530 in interfering with the rights of union members Sachse and Innis "to meet and assemble freely with other members of Local 282, and to express views, arguments, and opinions." We affirm.

*Background*

Kelley and Menz were president and secretary-treasurer of Local 282 of the International Laborers Union of North America, AFL–CIO, for 17 years, having last been elected in May, 1974. Dissatisfied union members began circulating a petition complaining about that election. On October 23, 1975, Sachse, Innis, and Dallas Dover (not then a member of Local 282) came to a job-site where Local 282 members were working to discuss and seek signatures on the petition. Kelley and Menz, on learning of these activities, proceeded to the job-site in Menz' red and white Cadillac, arriving as Sachse, Innis and Dover were leaving the site in Innis' truck.

Prosecution witnesses testified that Kelley threw a baseball bat at Innis' truck; that, when the truck stopped at a service station, Kelley fired three shots at it; and that a spent bullet was found at the service station.

Defense witnesses testified that Sachse fired a pistol at the Menz car as it passed the truck on arrival at the job-site (Sachse admitted having a shotgun in the truck but denied shooting any gun); that Kelley threw the bat in retaliation for the shooting; that Kelley and Menz did not pass the service station or fire any shots at the truck; that the shots may have come from a red and white Lincoln, owned by another dissident member of Local 282.

A witness said he'd seen what he thought was a .38 caliber pistol in Menz' car the night before the foregoing incidents. There was testimony that the gas station bullet may have been .38 caliber. Menz said the witness had seen a flashlight, not a gun, in his car.

After a jury verdict of guilty on the two counts above described, and of acquittal on a third count, Kelley and Menz were each sentenced to one year confinement on each count, the sentences to run consecutively. Appellants have remained free on bond pending appeal.[1]

The issues are whether the district court erred in (1) submitting the cause to the jury under Title 29, United States Code, §§ 530, 411(a)(1), (2); (2) excluding cross-examination of Sachse and Innis respecting threats against Kelley, Menz and other union members; (3) excluding grand jury testimony of Brenda Williamson; and (4) refusing to require election between Counts I and II, and imposing consecutive sentences on Counts I and II.

OPINION

■ Regarding submission to the jury, Kelley and Menz argue that no violation of or conspiracy to violate Section 530 of Title 29, United States Code was shown because:

(a) Sachse and Innis had terminated their protected activities under 29 U.S.C. § 411(a)(1) or § 411(a)(2) when the incidents in evidence occurred; and

* HOWARD T. MARKEY, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Two alleged co-conspirators were acquitted of all charges.

(b) The activities of Sachse and Innis were not among the proper remedies available to contest an election and thus were not protected under § 411(a)(1) or § 411(a)(2).

The argument borders the frivolous. The exercise of a right may be frustrated as much by retaliation as by prevention or interruption. It is obvious that acts of violence immediately following or otherwise directly relating to an activity stultify the ensuing repetition of that activity by an intimidated victim and by others as well. The chilling effect of the incidents in evidence upon Sachse's and Innis' subsequent exercise of their right to meet and assemble, or to express views and opinions, is clear.

The activities surrounding the efforts to obtain signatures on a petition for a new election are clearly protected under 29 U.S.C. § 530. 29 U.S.C. § 411(a)(2) specifically cites the right "to meet and assemble freely with other members" and "to express any views, arguments or opinions."[2]

That the effort to obtain a new election by petition was foredoomed (see, *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), holding that 29 U.S.C. § 482 exclusively governs post-election procedures) does not render even that effort an unprotected activity. It can hardly be said that the statutory provision

against intimidation and coercion of union members is limited to protection of activities likely to prove legally effective. That Kelley and Menz may have wasted their efforts against an activity doomed to eventual legal failure cannot change the coercive effect of those efforts upon the rights of Sachse and Innis to meet and assemble and to express views and opinions. Limitation of union members' rights to those activities likely to achieve legal success would defeat the congressional intent expressed in the Labor-Management Reporting and Disclosure Act of 1959, as amended, of which 29 U.S.C. § 530 and § 411(a)(2) are provisions.

On the second issue, we think the district court properly excluded evidence, proffered during cross-examination and intended to show that Sachse and Innis directed threats and violence toward them, and toward other loyal union members, as inadmissible under Federal Rules of Evidence 607, 608 and 609.

Kelley and Menz first argue that Rule 404(b)[3] of the Federal Rules of Evidence provides for admissibility of other crimes, wrongs, or acts of the victim of a crime to show the victims's motive and intent in bringing criminal charges against the accused. Because Rule 404(a)[4] of the Federal Rules of Evidence includes within "persons" the accused, the victim, or a witness, it is contended that the term "person" in Rule

---

2. Citing the recognition in § 411(a)(2) of a union's right to enforce reasonable *rules against interference* with its performance of contract obligations, Kelley and Menz say that Sachse and Innis failed to wear hard hats on the job site. Nothing of record, however, indicates that Sachse or Innis interfered in any manner with the union's performance of its obligations.

3. Fed.Rules Evid.Rule 404(b), 28 U.S.C. (hereinafter Rule 404(b)) provides:

Evidence of other crimes, wrongs, or acts is *not admissible to prove the character of a person in order to show that he acted in conformity therewith.* It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

4. Fed.Rules Evid. Rule 404(a), 28 U.S.C. provides as follows:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of witness. Evidence of the character of a witness, as provided in rules 607, 608, and 609.

404(b) must be so construed. A second argument is that an issue on which "other crimes" evidence may be received was whether Sachse and Innis were the aggressors at Cape Girardeau on October 23, 1975. Thirdly, it is claimed that the "other crimes" evidence should have been admitted as part of a wide ranging cross-examination designed to attack the credibility and veracity of Sachse and Innis.

The relevance of "other crimes" evidence to the motive or intent of a person in certain circumstances has long been recognized.[5] The general rule has been stated:

> The rule is that the prosecution may *not* introduce evidence of other criminal acts *of the accused* unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character. McCormick on Evidence, § 190 at 447 (2d ed. 1972) (emphasis added; footnote omitted).

■ Thus the rule has been traditionally one of exclusion, permitting evidence of other crimes, wrongs, or acts of a person only under limited circumstances, to show the motive and intent of that person *as the accused* in a prosecution for a related offense. This court has recently observed that the statement of the "other crimes" rule contained in Rule 404(b) "is consistent with the common law and with the decisions of this Circuit." *United States v. Calvert,* 523 F.2d 895, 906 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

Nor was there an issue on which the proffered evidence was receivable. As this court observed in *United States v. Clemons,* 503 F.2d 486, 489 (8th Cir. 1974):

> Whether an issue has been raised for purposes of receiving evidence of other crimes depends upon both the elements of the offense charged and the nature of the defense presented (footnotes omitted).

The proffered evidence concerned events well prior to those at Cape Girardeau and was clearly unrelated to the elements of the offense charged. Kelley and Menz presented no defense of justification or excuse, such as self-defense. The issue of who might have been the aggressor was therefore not before the court.[6]

■ The attempted cross-examination finds no justification as a permissible attack on the veracity and credibility of the witnesses. Cross-examination concerning "other crimes" is not related to the witness' propensity for truthfulness or untruthfulness and its limitation is within the sound discretion of the trial judge. See, *United States v. Alberti,* 470 F.2d 878, 882 (2nd Cir. 1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973). Determination that the proffered evidence was irrelevant, and therefore inadmissible, will not be disturbed absent a clear showing of abuse of discretion. *Cotton v. United States,* 361 F.2d 673, 676 (8th Cir. 1966); *United States v. Skillman,* 442 F.2d 542, 551–2 (8th Cir.), *cert. denied* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971); *United States v. Campanile,* 516 F.2d 288, 292 (2nd Cir. 1975). The proffered cross-examination was not only irrelevant but unnecessary for the purposes alleged. The jury had sufficient information concerning the power struggle within Local 282 to make "a discriminating appraisal of the witnesses' motives and bias." *United States v. Baker,* 494 F.2d 1262, 1267 (6th Cir. 1974). The fact that Sachse and Innis had been fired upon was attested to by independent and disinterested witnesses and provided fully adequate motivation for charging and testifying against Kelley and Menz. The district court committed no error in foreclosing cross-examination into alleged threats and violent acts of Sachse and Innis.

■ Consideration of the third issue raised on appeal convinces us that neither error nor abuse of discretion occurred in the

---

5. See, e. g., *State v. Raper,* 141 Mo. 327, 42 S.W. 935 (1897); *Kempe v. United States,* 151 F.2d 680 (8th Cir. 1945).

6. The numerous cases involving claims of self-defense and cited in the brief of Kelley and Menz are thus irrelevant.

exclusion of the grand jury testimony of Brenda Williamson, who was unavailable as a witness at trial. That testimony was irrelevant and thus inadmissible. Ms. Williamson was employed as a secretary for Alberici-Fruin-Colnon in Morriston, Missouri at the main building on the Noranda job-site. Her testimony related solely to events transpiring on October 24, 1975, the day after the attack on Sachse and Innis on which the present charges were based. Contrary to the urging of Kelley and Menz, Ms. Williamson's statement that she did not see a weapon on Kelley's person on October 24th cannot be considered relevant to any question of whether Kelley possessed a gun on October 23rd. Similarly, we find no merit in the argument that Ms. Williamson's having seen other men with Kelley and Menz on October 24th could have effected the jury's determination of the conspiracy count on which Kelley and Menz were convicted.

 Kelley and Menz rely on the Fifth Amendment provision against double jeopardy in contending that the district court should have required election between conspiracy Count I and substantive Count II. That reliance is misplaced. Whether a substantive offense and a conspiracy to commit it are separate and distinct depends upon whether one requires proof of an essential element which the other does not. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). The essence of conspiracy is the agreement to commit the crime. *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616, 622 (1975). Thus proof of an agreement was required for conviction on the conspiracy Count I in the present case. No such proof was required for conviction on the substantive Count II. Section 530, Title 29, United States Code states that "any person" who commits the acts there prohibited violates the statute.[7]

There was no error in refusing to require election between Count I and Count II.

 We find no error in the imposition of consecutive maximum sentences on Counts I and II. Separate, cumulative sentences may be imposed for conspiracy to commit an offense and for its actual commission. *Iannelli v. United States, supra* at 777–78, 95 S.Ct. 1284; *United States v. Calvert, supra* at 914; *United States v. Bertucci,* 333 F.2d 292 (3rd Cir.), *cert. denied,* 379 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45 (1964).

The judgment below is affirmed.

---

7. *United States v. Schaefer,* 510 F.2d 1307 (8th Cir. 1975), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975) is cited by Kelley and Menz. In that case defendants were convicted of conspiracy to gamble and of gambling (18 U.S.C. § 1955). This court reversed the conspiracy conviction as comprehending nothing more than the agreement which defendants necessarily entered in performing the substantive crime. One cannot gamble alone.