STATE of Wisconsin, Plaintiff-Respondent,

v.

Lawrencia BEMBENEK, Defendant-Appellant.

Court of Appeals

*No. 86–1186. Submitted on briefs February 3, 1987.—Decided May 21, 1987.*

(Also reported in 409 N.W.2d 432.)

For the defendant-appellant the cause was submitted on the briefs of *Thomas G. Halloran* of *Halloran, Burke, Dunn & Henderson, S.C.,* Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general and *Michael R. Klos,* assistant attorney general.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

SULLIVAN, J.   Lawrencia Bembenek appeals an order denying her motion for a new trial under sec. 974.06, Stats., on the ground of newly discovered evidence or in the interest of justice. We hold that Bembenek's polygraph evidence would be inadmissible in a new trial, that evidence of the alleged confession of Joseph Hecht lacks sufficient reliability to be admissible, and that the rest of the evidence Bembenek presented would not affect the outcome of the trial. Due process, therefore, does not require a new trial. Accordingly, we affirm.

In March 1982, Bembenek was convicted of the first degree murder of Christine Schultz. At the time of the murder, Bembenek was married to the victim's ex-husband, Elfred Schultz. Bembenek's conviction

was upheld on appeal. *State v. Bembenek,* 111 Wis. 2d 617, 331 N.W.2d 616 (Ct. App. 1983).

Bembenek moved for a new trial based on newly discovered evidence in August 1985. Eight months later, she supplemented her motion with a request that the court consider the results of a polygraph test she had just taken. The court refused to admit any polygraph evidence. The other alleged newly discovered evidence consisted of affidavits generally purporting to show that Joseph Hecht actually killed Christine Schultz and that Elfred Schultz may have hired Hecht to commit the murder.

Because Bembenek's motion was not timely under sec. 974.02, Stats., the trial court treated the motion as one for a new trial under sec. 974.06, Stats. The trial court denied the motion, ruling that the Hecht affidavits lacked sufficient indicia of reliability to be admissible at a new trial and that the evidence presented by the remaining affidavits was known to the defense at trial, was cumulative to evidence known at trial, or would not probably change the result. *See State v. Boyce,* 75 Wis. 2d 452, 457, 249 N.W.2d 758, 760 (1977). The trial court concluded that due process did not mandate a new trial. We agree.

After the time for appeal or postverdict remedy has expired, a new trial may be granted under sec. 974.06, Stats., if "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." Sec. 974.06(3)(d). Only jurisdictional and constitutional issues may be considered under this section. *Vara v. State,* 56 Wis. 2d 390, 392, 202 N.W.2d 10, 11 (1972). The movant has the burden to establish her entitlement to relief under sec. 974.06 by clear

and convincing evidence. *State v. Walberg,* 109 Wis. 2d 96, 104, 325 N.W.2d 687, 691–92 (1982).

We hold that due process may require granting a new trial under sec. 974.06, Stats., on the basis of evidence discovered after the time for bringing post-verdict motions has passed. We further hold that due process does not warrant a new trial unless the newly discovered evidence meets, at a minimum, the following criteria:

> (1)   The evidence must have come to the moving party's knowledge after a trial; (2)   the moving party must not have been negligent in seeking to discover it; (3)   the evidence must be material to the issue; (4)   the testimony must not be merely cumulative to the testimony which was introduced at trial; and (5)   it must be reasonably probable that a different result would be reached on a new trial.

*Boyce,* 75 Wis. 2d at 457, 249 N.W.2d at 760. We determine constitutional questions independently on appeal. *See State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457, 465 (1984).

In this case, the alleged newly discovered evidence consists of the results of a polygraph test taken by Bembenek after filing this motion, three affidavits relating to Hecht's alleged confession, and six affidavits concerning Elfred Schultz. Other evidence considered and rejected by the trial court is not at issue on appeal. None of the evidence before us meets the criteria listed above.

Bembenek first argues that the trial court should have considered evidence of her polygraph test in which she denied killing Schultz. She argues that

polygraph evidence may be admissible under Wisconsin law under certain circumstances.

In *State v. Ramey,* 121 Wis. 2d 177, 180–81, 359 N.W.2d 402, 404–05 (Ct. App. 1984), this court held that polygraph evidence must be excluded from criminal proceedings on public policy grounds. Bembenek argues that the *Ramey* court misinterpreted the supreme court's ruling in *State v. Dean,* 103 Wis. 2d 228, 307 N.W.2d 628 (1981), and that *Dean* left open the possibility that polygraph evidence may be admitted if sufficiently reliable. This argument was rejected in *Ramey,* 121 Wis. 2d at 179–80, 359 N.W.2d at 404, and the supreme court denied review. We decline to reconsider *Ramey.* Because Bembenek's polygraph evidence would be inadmissible at a new trial, it cannot form the basis of a due process challenge to her conviction. The trial court, therefore, was correct in refusing to consider it as newly discovered evidence.

Next, Bembenek presents affidavits from a private investigator and an attorney who, while working for her, interviewed Joseph Hecht during the summer of 1984. A third affidavit relates an interview with a fellow inmate of Hecht in late 1985. According to these three affidavits Hecht, who is serving a sentence of life plus twenty-six years, admitted shooting Schultz on contract. He refused to name those who hired him but, according to one affidavit, did say that Bembenek had not been involved. The state refused immunity, and Hecht refused to testify.

Bembenek argues that the Hecht affidavits would be admissible at a new trial under sec. 908.045(4), Stats., which excepts from the hearsay rule an unavailable declarant's statement against interest. That subsection makes admissible

[a] statement which ... at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborated.* [Emphasis added.]

Hecht was already serving a life sentence at the time of his alleged confession, and he had also been sentenced to terms totalling twenty-six years consecutive to his life sentence. Because Hecht will in any event be spending a large portion of his life in prison, his alleged statements did not so far tend to subject him to criminal liability that a reasonable person in his position would not have made them unless true.

Moreover, Hecht's statements lack meaningful corroboration. Bembenek asserts that Hecht's presence in Milwaukee around the time of the murder corroborates his "confession." As the trial court pointed out, however, "since in excess of half a million people have also lived in Milwaukee at the same time, his presence ... is no corroboration whatsoever." Bembenek also argues that Hecht's statements are corroborated by trial testimony concerning the layout of the crime scene and the appearance of the perpetrator. Hecht could have obtained these details, however, from several sources. The trial was well publicized and the transcript is a public record. Moreover, the state presented evidence suggesting that Jacob Wissler, who visited Hecht in prison and has been linked with Bembenek, could have supplied him with the necessary information and may even have paid him to "confess."

The corroboration Bembenek cites does nothing to establish the reliability of Hecht's statements. Hecht is not even willing to testify under oath as to those statements. Nothing in the record provides sufficient indicia of reliability to render Hecht's statements admissible under sec. 908.045(4), Stats.

Even though Hecht's hearsay statements are inadmissible under sec. 908.045(4), Stats., they may be constitutionally admissible. "The hearsay rule may not be applied mechanistically where proffered testimony is critical to a defendant's defense and bears persuasive assurances of trustworthiness." *State v. Sharlow,* 110 Wis. 2d 226, 233, 327 N.W.2d 692, 696 (1983). Presence of the following four factors provides adequate assurances of trustworthiness: (1) the confession was made spontaneously to a close acquaintance shortly after the crime; (2) it is corroborated by other evidence; (3) it "was in a very real sense self-incriminatory and unquestionably against interest"; and (4) the declarant is available to testify. *Id.* at 233–34, 327 N.W.2d at 696 (quoting *Chambers v. Mississippi,* 410 U.S. 284, 300–01 (1973)).

> The decision whether the circumstances provide "considerable assurance" of the trustworthiness of a third-party confession lies within the sound discretion of the trial court which is best situated to weigh the reliability of the circumstances surrounding the declaration. Consequently, this court will not reverse the trial court's decision unless it is clearly erroneous.

*State v. Brown,* 96 Wis. 2d 238, 245–46, 291 N.W.2d 528, 532–33 (1980) (citations omitted).

■ In this case, the trial court thoroughly considered each of the four factors above in light of the pertinent facts and reasonably concluded that the affidavits containing Hecht's hearsay "confessions" were not sufficiently trustworthy to be admissible at a new trial. The trial court did not abuse its discretion, *see Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981), and its determination was not clearly erroneous. Because Hecht's hearsay statements are not admissible, they would not probably change the result at a new trial. Hence, due process does not require that Bembenek be granted a new trial on their account.

Bembenek next asserts that several other affidavits entitle her to a new trial. She states that statements in the affidavits of Tammy Brown, Frank Rzepkowski, and Janice Emerson were not known to the defense at trial and, hence, are newly discovered evidence. Bembenek also argues that even though the statements of three others were known at trial, their significance could not be appreciated without the Brown, Rzepkowski, and Emerson statements.

■ "Newly discovered evidence" does not include a new appreciation of the importance of evidence previously known but not used. *Vara,* 56 Wis. 2d at 394, 202 N.W.2d at 12. Bembenek attempts to distinguish *Vara* because in *Vara,* all of the evidence considered in the postconviction motion was known at trial, while in this case, the new appreciation of the known evidence was allegedly caused by newly discovered evidence. We fail to see the distinction. *Vara* applies regardless of what caused the known evidence to become newly

significant. We will therefore consider only the Brown, Rzepkowski, and Emerson affidavits.

■

Brown's affidavit states that Christine Schultz was afraid of Elfred Schultz and that he had threatened and beaten her. The trial court held that this affidavit was merely cumulative to evidence, known at trial, that Christine greatly feared Elfred. Bembenek offers no reason to upset the trial court's holding on this matter. Because the Brown affidavit is merely cumulative, due process does not require a new trial.

According to Rzepkowski's affidavit, Elfred Schultz told Rzepkowski that Schultz could give him a telephone number in case Rzepkowski wanted to "get rid" of his ex-wife. Even assuming that Schultz's hearsay statement would be admissible at a new trial, the statement does no more than implicate Schultz; it does not exonerate Bembenek. Hence, it would not probably change the result at a new trial.

Finally, Emerson's affidavit states that she was the manager of the apartment building in which Bembenek and Elfred Schultz lived at the time of the murder and that, around the time of the murder, Schultz angrily ordered Emerson not to cooperate with any police investigation. We agree with the trial court's determination that this affidavit does not implicate Schultz any more or less than Bembenek. Again assuming that Schultz's hearsay statement would be admissible at a new trial, we conclude that it would not probably change the result.

In summary, none of the items presented by Bembenek constitute newly discovered evidence as defined in *Boyce*. Due process does not require a new trial based on evidence that fails to meet this standard. Because Bembenek has not shown by clear and

257

convincing evidence that she is constitutionally entitled to a new trial, her motion under sec. 974.06, Stats., was properly denied.

*By the Court.*—Order affirmed.